NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH DAVID YOUNG, | |
| | Civil Action No. 07-03129 (SDW-MCA) |
| Plaintiff, | |
| v. | **OPINION** |
| JERRY SPEZIALE, DR. MAGDY WAHBA, LORI HANTON, JOHN DOE(S) AND JANE DOE(S), the PASSAIC COUNTY SHERIFF'S DEPARTMENT and PASSAIC COUNTY, | November 10, 2009 |
| Defendants. | |

**WIGENTON**, District Judge.

Before the Court is Defendant Lori Hanton's ("Hanton" or "Defendant") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b) or for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 (the "Motion"). The Motion seeks to dismiss Plaintiff Joseph David Young's ("Young" or "Plaintiff") 42 U.S.C. § 1983 claims, which assert that Plaintiff's constitutional rights were violated as a result of inadequate medical care. This Court has jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b). The Motions are decided without oral argument pursuant to Federal Rule of Civil Procedure 78.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff was a pretrial detainee of the United States Marshals Service ("USMS") at the Passaic County Jail from July 2006 until August 2007. (Second Am. Compl. ¶ 1.) Hanton is a nurse consultant in the Office of Interagency Medical Services ("OIMS") in the USMS Headquarters in Arlington, Virginia. As part of her responsibilities as a nurse consultant,

Hanton reviews and either approves or disapproves medical treatment requests for USMS detainees.  (*Id*. ¶ 6.)

On or about November 27, 2006, Plaintiff was startled by a raid in his dormitory and twisted his knee while getting out of his bunk bed.  (Second Am. Compl. ¶¶ 15-16.)  On the next day, November 28, 2006, Plaintiff sought treatment and received "something", presumably medication, from the jail doctor, Dr. Magdy Wahba ("Dr. Wahba"), for the swelling in his knee.  (Second Am. Compl. ¶¶ 5, 17.)

After further failed attempts to receive adequate medical care, Plaintiff filed an Inmate Grievance Form with the Passaic County Jail.  (Decl. of Joseph David Young ¶¶ 4-5 (hereinafter "Young Decl.").)  On February 16, 2007, Plaintiff filed a second Inmate Grievance Form after hearing nothing from his initial filing.  (*Id*. ¶ 6.)  About two weeks later, Plaintiff had a consultation with Dr. Wahba who saw him, but did not refer him to an orthopedic physician until April 2007.  (*Id*. ¶ 7; Second Am. Compl. ¶ 18.)

On or about April 3, 2007, the orthopedic surgeon requested an MRI, which found that Plaintiff had a torn medial meniscus.  (Second Am. Compl. ¶ 19.)  In addition, the surgeon ordered physical therapy twice a week for six weeks.  (*Id*.)

On April 13, 2007, the request for physical therapy was forwarded to the Supervisory United States Marshal for the District of New Jersey, who reviewed the request and forwarded it to Hanton.  (*Id*. ¶ 20.)  On April 20, 2007, Hanton approved only a physical therapy evaluation and one physical therapy visit.  (*Id*.)

On May 22, 2007, a request for arthroscopic surgery on Plaintiff's knee was forwarded to Hanton.  (*Id*. ¶ 21.)   She denied the request outright.  (*Id*.; Young Decl. ¶ 9.)

On July 17, 2008 Plaintiff initiated this action, *pro se*. On April 9, 2009 Plaintiff filed his Second Amended Complaint against Hanton, Passaic County, Jerry Speziale, Dr. Wahba, Passaic County Jail, and Passaic County Sheriff's Department (collectively, "Defendants") asserting, among other things, violations of his constitutional rights based upon Defendants' failure to provide him with adequate medical care. On June 19, 2009, Hanton filed this Motion to Dismiss or in the Alternative, for Summary Judgment.

## **MOTION TO DISMISS STANDARD**

If, on a motion under Fed. R. Civ. P. 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Fed. R. Civ. P. 56. Fed. R. Civ. P. 12(d). At this juncture, however, treating this motion as one for summary judgment would be premature. The parties have not concluded discovery and Plaintiff would be at a disadvantage in opposing Defendant's motion. Defendant argues, among other things, that her defense of qualified immunity immunizes her from discovery, as well as liability. (Def. Lori Hanton's Reply Br. in Supp. of Mot. to Dismiss 12 (hereinafter "Def.'s Reply Br.").) Thus, allowing Plaintiff an opportunity to obtain discovery, and then treating this motion as one for summary judgment, would defeat at least part of the purpose of Defendant's motion. Notwithstanding, this court will treat Defendant's motion as one for dismissal pursuant to Fed. R. Civ. P. 12(b).

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(internal citations omitted); *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief.").

In considering a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the Plaintiff, and determine whether, under any reasonable reading of the complaint, the Plaintiff may be entitled to relief.'" *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holding Ltd.,* 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555). As the Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556–57, 570) (internal citations omitted). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id*.

## DISCUSSION

Defendant Hanton moves to dismiss Plaintiff's § 1983 claims, which assert violations of Plaintiff's constitutional rights resulting from inadequate medical care. Defendant argues that Plaintiff fails to make a prima facie showing of inadequate care under either the Eighth or Fourteenth Amendments and that even if Plaintiff asserted a viable claim, Defendant Hanton is protected by the qualified immunity doctrine.[1] For the reasons explained below, Defendant's motion will be denied.

## I.   42 U.S.C. § 1983

§ 1983 of Title 42 of the United States Code provides a cause of action for an individual whose constitutional or federal rights are violated by those acting under color of state law:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws. 42 U.S.C. § 1983.

To establish a viable § 1983 claim, a plaintiff must demonstrate that "'the conduct complained of was committed by a person acting under color of state law'" and that "'this conduct deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Kost v. Kozakiewicz,* 1 F.3d 176, 184 (3d Cir. 1993) (quoting

---

[1] Defendant also argues that Plaintiff has failed to comply with the mandatory exhaustion requirements of the Prison Litigation Reform Act because he failed to submit administrative grievances for his complaints. *See Concepcion v. Morton,* 306 F.3d 1347 (3d Cir. 2002); 42 U.S.C. § 1997e(a). At this early stage in the litigation, however, the Court finds that, taking Young's allegations as true, he has done enough. Passaic County Jail had an Inmate Handbook which set forth the grievance procedures an inmate was required to follow. (*See* Dec. of Capt. Eric Speranza, ¶3, 5 (hereinafter "Speranza Dec."), Attachment A). In support of her motion, Defendant argues "that plaintiff did not file any grievance concerning physical therapy or surgery." (Def.'s Reply Br. 3-4). Plaintiff on the other hand claims he has filed two grievance forms regarding his November 2006 knee injuries (Young Decl. ¶¶5-6.) Furthermore, Young alleges that he has only received one of the two grievance forms from the Passaic County jail. (*Id*. 5.) Under the standard for a motion to dismiss the Court must accept Plaintiff's allegations as true. *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008). Thus, for the purposes of this motion, we find that Young followed the jail's administrative procedure requirements and may proceed with his claim.

*Parratt v. Taylor,* 451 U.S. 527, 535 (1981), *overruled in part on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986)).

"By itself, Section 1983 does not create any rights, but provides a remedy for violations of those rights created by the Constitution or federal law." *Morse v. Lower Merion School Dist.,* 132 F.3d 902, 906-07 (3d Cir.1997) (citing *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979)).

**II.     Qualified Immunity**

In her motion, Defendant argues that Plaintiff's constitutional claims fail to state a claim for which relief can be granted, and that even if Plaintiff had adequately alleged a § 1983 violation, she is entitled to qualified immunity. In light of "'the importance of resolving immunity questions at the earliest possible stage in litigation,'" the Court addresses the immunity analysis at the outset. *Saucier v. Katz,* 533 U.S. 194, 201 (2001) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Because, as is explained *infra,* the first step of the qualified immunity analysis "is not a question of immunity at all, but is instead the underlying question of whether there is even a wrong to be addressed in an analysis of immunity," *Curley v. Klem,* 499 F.3d 199, 207 (3d Cir. 2007), the substantive issues raised by Defendant's motion to dismiss are effectively subsumed within the immunity analysis. *See Thomas v. Ferguson,* 361 F. Supp. 2d 435, 442 n. 7 (D.N.J. 2004).

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier*, 533 U.S. at 200 (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)). Such immunity is appropriate where an officer's conduct is "objectively reasonable in light of the constitutional rights affected." *Odd v. Malone,* 538 F.3d 202, 217 (3d Cir. 2008) (citing *Carter v. City of Phila.,* 181 F.3d 339, 356 (3d Cir. 1999)). In other words, the ultimate inquiry is whether a hypothetical reasonable officer would have known she was violating the plaintiff's

6

clearly established constitutional rights. *Miller v. Clinton County,* 544 F.3d 542, 547 (3d Cir. 2008).

The Supreme Court in *Saucier* created a mandatory two prong analysis to determine whether a § 1983 defendant is entitled to qualified immunity. 533 U.S. at 201. Under *Saucier*, courts were directed to determine: (1) whether "'[t]aken in the light most favorable to the party asserting the injury ... the facts alleged show the officer's conduct violated a constitutional right[,]' [and (2)] 'whether the right was clearly established.'" *Hubbard v. Taylor,* 538 F.3d 229, 231 (3d Cir. 2008) (quoting *Saucier*, 533 U.S. at 201). In considering the second prong of the *Saucier* test, the Third Circuit clarified that "[a] right is clearly established for the purposes of qualified immunity when its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hubbard,* 538 F.3d at 236 (quoting *Williams v. Bitner,* 455 F.3d 186, 191 (3d Cir. 2006)). This standard "'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Hubbard,* 538 F.3d at 236 (quoting *Gilles v. Davis,* 427 F.3d 197, 203 (3d Cir. 2005)).[2]

### A.   Step One – Allegations of 14th Amendment Violations

A Section 1983 claim for inadequate medical care arises under either the Eighth Amendment, or the Fourteenth Amendment, depending on whether the state has secured a formal adjudication of guilt against the plaintiff prior to his injury. *Natale v. Camden County Corr. Facility,* 318 F .3d 575, 581 (3d Cir. 2003) (citing *City of Revere v. Mass. Gen. Hosp.,* 463 U.S. 239, 244 (1983)). Since Plaintiff was a pretrial detainee, the Due Process Clause of the

---

[2] Recently, the framework for this analysis was slightly altered by the Supreme Court in *Pearson v. Callahan,* 129 S. Ct. 808, 818 (2009). Courts are now "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* In essence, the Supreme Court no longer requires that the courts first struggle with the often difficult issue of whether there has been a violation of a constitutional right.

Fourteenth Amendment, rather than the Eighth Amendment, governs Plaintiff's claims for inadequate medical care. *See Sylvester v. City of Newark,* 120 Fed. Appx. 419, 423 (3d Cir. 2005).

A pretrial detainee's right to medical care under the Due Process Clause is analyzed under the same standard as a convicted prisoner's right to medical care under the Eighth Amendment.[3] *Natale*, 318 F.3d at 581. The Eighth Amendment's proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble,* 429 U.S. 97, 103-04 (1976).

In order to prevail on a claim of denial for medical care, a plaintiff must make a two-part showing: (1) the existence of a serious medical need, and (2) behavior on the part of the defendant officials that constitutes deliberate indifference to that need. *Id.* at 106.

**1) Serious Medical Need**

The plaintiff first must demonstrate that his medical needs are serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992). Serious medical needs include those that have been diagnosed by a physician as requiring treatment or are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if left untreated, would result in lifelong handicap or permanent loss. *Monmouth County Corr. Inst. Inmates v. Lanzaro,* 834 F.2d

---

[3] A pre-trial detainee's rights under the Fourteenth Amendment are "at least as great as" a convicted prisoner's rights under the Eighth Amendment. *Natale,* 318 F.3d at 581. While the Third Circuit in *Natale* recognized that a pre-trial detainee's rights under the Fourteenth Amendment may in fact be greater than a convicted prisoner's rights under the Eighth Amendment (but explicitly declined to decide the question), the Court noted that "[i]n previous cases, we have found no reason to apply a different standard than that set forth in *Estelle* ([the Supreme Court case] pertaining to prisoners' claims of inadequate medical care under the Eighth Amendment) when evaluating whether a claim for inadequate medical care by a pre-trial detainee is sufficient under the Fourteenth Amendment." *Id.*; *see also Tsakonas v. Cicchi,* No. 07-4115, 2009 WL 500567, at *2 n.1 (3d Cir. Jan. 30, 2009) (noting that the Third Circuit has still not decided whether the Fourteenth Amendment provides greater protection for pre-trial detainees than the Eighth Amendment provides for convicted prisoners).

326, 347 (3d Cir. 1987). Factors to consider in this analysis include "the severity of the medical problems, the potential for harm if the medical care is denied or delayed and whether any such harm actually resulted from the lack of medical attention." *Maldonado v. Terhune,* 28 F. Supp. 2d 284, 289 (D.N.J. 1998).

The plaintiff then must show that the defendant officer(s) acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer v. Brennan,* 511 U.S. 825, 837-38 (1994).

Under the first prong of the *Estelle* test, this Court must determine whether Plaintiff had a serious medical need. Plaintiff's torn meniscus was not only recognized by two physicians as requiring medical treatment, but its debilitating effects, as alleged in the Second Amended Complaint, would easily be recognizable to a layperson as requiring medical attention. (Second Am. Compl. ¶¶ 17-19.) According to the Second Amended Complaint, to this date, Young still suffers from pain as a result of his knee injury. (*Id*. ¶ 26.) Furthermore, Plaintiff has gained a significant amount of weight due to the inactivity resulting from his injury, and he occasionally falls because his injury does not permit him to maintain balanced footing. (*Id*.) As alleged in his complaint, Plaintiff's medical need is serious. *See Miller v. Trenton Police*, No. 08-3092, 2009 WL 936876, at *2 (D.N.J. April 6, 2009) (a serious condition is "'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention'" (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991))); *see also Olivares v. United States*, No. 07-3476, 2008 WL 4308241, at * 1, 6 (D.N.J. Sept. 15, 2008) (holding that plaintiff's condition which caused his knees to buckle constituted a serious medical injury); *Williams v. Kort*,  223 Fed. Appx. 95, 100

9

(3d Cir. 2007) (plaintiff's injury resulting from twisting knee amounted to a serious medical need); *McCabe v. Prison Health Services*, 117 F. Supp. 2d 443 (E.D.Pa. 1997) (holding that plaintiff's circulatory problem in leg was a serious medical need).

### 2) Deliberate Indifference

Under the second prong of the *Estelle* test, Plaintiff must prove that defendant officers acted with deliberate indifference. In this case, there are two separate instances where Hanton is alleged to have denied Young adequate medical care. First, Plaintiff alleges that Hanton only approved one physical therapy session when the orthopedic physician "ordered a course of physical therapy, twice a week for six weeks." ((Second Am. Compl. ¶¶ 19-20.) Secondly, Plaintiff alleges that Hanton denied the request for Young's surgery. (*Id.* ¶ 21.)

In the first instance, Plaintiff alleges that Hanton only partially approved his request for physical therapy. Under no circumstances does this Court find that Hanton's mere modification of an order for physical therapy constitutes deliberate indifference. An inmate can show deliberate indifference where, for example, "prison authorities deny reasonable requests for medical treatment ... and such denial exposes the inmate to undue suffering." *Lanzaro,* 834 F.2d at 346 (internal quotations omitted). However, a mere difference of opinion between the prison's medical staff and the inmate with regard to the diagnosis or treatment that the inmate receives does not support an Eighth Amendment claim. *See Inmates of Allegheny Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir. 1979) (noting that courts will "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... which remains a question of sound professional judgment.") (internal citations omitted). The chief question is whether the plaintiff prisoner has been provided with *some* type of treatment by the defendants, regardless of whether it is what the plaintiff desired. *Farmer v. Carlson,* 685 F. Supp. 1335, 1339 (M.D.Pa. 1988). In this case, Hanton, after receiving a recommendation from a physician, approved sufficient

physical therapy so that plaintiff could learn the necessary exercises to perform himself. (Second Am. Compl. ¶ 20.) Her actions, in that instance, did not constitute deliberate indifference.

As to whether Plaintiff's pleadings sufficiently allege deliberate indifference on the part of Hanton in the second instance, the Court finds, at this stage in the litigation, that Plaintiff's allegations are sufficient to state a § 1983 claim.

As the Court of Appeals has recognized,

> deliberate indifference could exist in a variety of different circumstances, including where knowledge of the need for medical care is accompanied by the intentional refusal to provide that care[,] or where short of absolute denial necessary medical treatment is delayed for non-medical reasons, or where prison authorities prevent an inmate from receiving recommended treatment.

*Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d. Cir. 1993) (internal quotations and citations omitted). The Court of Appeals has likewise noted that "the threat of tangible residual injury can establish deliberate indifference," *Spruill v. Gillis*, 372 F.3d 218, 235 (3d. Cir. 2004) (internal quotations and citations omitted), and that "[p]rison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for an easier and less efficacious treatment of the inmate's condition." *Lanzaro,* 834 F.2d at 347 (internal quotations and citations omitted).

Citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), Defendant argues that Plaintiff's allegations merely parrot the legal requirements of a § 1983 claim and are implausible. ((Br. of Lori Hanton in Supp. of Mot. to Dismiss 19-21 (hereinafter "Def.'s Br.").)) Thus, Defendant argues, her motion must be granted. This Court disagrees. In *Iqbal*, the Supreme Court held that a plaintiff seeking to impose supervisory liability on a § 1983 defendant must allege more than that the particular defendant "knew of, condoned, and willfully and maliciously agreed to" violate a plaintiff's constitutional rights. *Id*. at 1961. Although such allegations were held to be

11

insufficient in *Iqbal,* the plaintiff's claims there are distinguishable from those of Young. Specifically, the plaintiff in *Iqbal* brought a *Bivens* action for discrimination in violation of the First and Fifteenth Amendments. Such claims require a plaintiff to plead and prove that the defendant acted with discriminatory purpose. *Id*. at 1948. As a result of this particular requirement, the Supreme Court concluded that mere knowledge on the part of the supervisor was an insufficient basis for *Bivens* liability, which it treated as equivalent to § 1983 liability. *Id.* at 1948-49. There is no such requirement for a § 1983 claim for inadequate medical care arising under either the Eighth or Fourteenth Amendments. *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (outlining requirements necessary to plead a § 1983 claim for inadequate medical care). The Supreme Court, in *Iqbal*, even prefaced its analysis of this issue by recognizing that "[t]he factors necessary to establish a *Bivens* [or § 1983] violation will vary with the constitutional provision at issue." *Iqbal,* 129 S.Ct. at 1948. *Iqbal* thus does not support the proposition that general allegations are never sufficient to support a § 1983 claim. *See id*. at 1949 ("the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007))

In any event, Young's Second Amended Complaint goes further and specifically alleges that "[a]s a proximate result of defendant['s] denial of medical care to the plaintiff, he suffered direct physical harm as well as residual physical injury due to the long-term cumulative effects of being forced to walk on his severely injured knee." (Second Am. Compl. ¶ 39.) It is plausible (and can be inferred from the well-pleaded facts) that these long term effects resulted, at least in part, because "Defendant Hanton denied the request for surgery outright." (*Id*. ¶ 21.); *see also Lanzaro,* 834 F.2d at 346-47 ("[d]eliberate indifference is also evident where prison officials

erect arbitrary and burdensome procedures that 'result[ ] in interminable delays and outright denials of medical care to suffering inmates"); *Iqbal,* 129 S.Ct. at 1950. Consequently, this Court finds that Plaintiff's pleadings adequately allege that Hanton was deliberately indifferent to Plaintiff's serious medical needs.

While, upon a motion by Defendants for summary judgment, Plaintiff will have to come forward with evidence demonstrating that Defendant Hanton knew about Plaintiff's injury and personally interfered, for non-medical reasons, with Plaintiff's treatment, at this stage, the pleadings adequately state a claim against Defendant Hanton.[4]

Likewise, Defendant Hanton may come forward at a later time (after Plaintiff has had a chance to engage in further discovery) with evidence undermining Plaintiff's allegations; however, at this stage in the litigation, the Court finds that Plaintiff has adequately alleged that Defendant was deliberately indifferent to his medical needs. *See Spruill*, 372 F.3d at 237-38 ("[s]ince at this stage we are making no judgment about what actually happened, but only about the sufficiency of the pleadings, we must take [Plaintiff's] factual allegations, and the reasonable inferences, therefrom, as true.").

### B. Step Two – Clearly Established Right

Having found that Plaintiff has adequately pled a claim under § 1983, the Court now "asks whether immunity should nevertheless shield the officer from liability." *Curley*, 499 F.3d at 207 (internal quotations omitted). Where, as here, the qualified immunity defense is raised in a motion to dismiss, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff," *Phillips*, 515 F.3d at 231 (citation omitted), and

---

[4] The Court notes that Defendant has framed her motion as one for dismissal or in the alternative for summary judgment; however, as explained *supra*, summary judgment at this juncture (before an adequate exchange of discovery) is improper and Plaintiff would, at the very least, be entitled to a reasonable amount of discovery so as to obtain and present evidence supporting his opposition. *See Rose v. Bartle,* 871 F.2d 331, 340 (3d. Cir. 1989) (holding that all parties must be given the opportunity to present material to the court when the court converts a motion to dismiss into a motion for summary judgment).

assess "whether it would be clear to a reasonable officer that his conduct [as alleged in the Complaint] was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 201-02.

Accepting the Plaintiff's allegations as true, the Court finds that it would have been clear to a reasonable officer that Defendant's actions would have violated a "clearly established" constitutional right. *Id*. at 201. Plaintiff has alleged that Hanton denied his request for medically necessary surgery that was approved by a physician, and that as a result of said denial, Plaintiff's medical condition deteriorated and led to further serious injury. In light of Third Circuit precedent holding that *Estelle's* deliberate indifference standard is satisfied "where knowledge of the need for medical care is accompanied by the intentional refusal to provide that care[,]" *Durmer*, 991 F.2d at 67, and that "the threat of tangible residual injury can establish deliberate indifference," *Spruill*, 372 F.3d at 235, the Court finds that a reasonable officer would have known that the denial of Plaintiff's surgery request would have violated Plaintiff's rights under the Fourteenth Amendment. *See Saucier*, 533 U.S. at 201-02.

While the issue of qualified immunity may be revisited in a later motion for summary judgment, at this stage of the litigation, where the Court must credit Plaintiff's factual allegations and construe the Complaint in the light most favorable to Plaintiff, the Court finds that Defendant is not entitled to qualified immunity.

**III.     Discovery**

The Court notes Plaintiff's concern that discovery is incomplete and that Defendant's motion might have "opened questions which Plaintiff should now be allowed to pursue." ((Pl.'s Br. in Opp. To Def.'s Mot. to Dismiss 24 (hereinafter "Pl.'s Br.").) For example, Plaintiff asserts that, in response to his motion, for the first time he learned of the involvement of Nurse Maria

Dinger.[5] (*Id.*)  According to Defendant's moving papers and accompanying affidavit, Nurse Dinger, not Hanton, was involved in the consideration of the request for surgery.  (Def.'s Reply Br. 8; Hanton Dec. Ex. B 4).  Consequently, it is appropriate for the parties to engage in further, even if limited, discovery (such as the deposition of Hanton) to exchange further discoverable material in preparation for trial or other dispositive motions.

The Court is aware of the qualified immunity doctrine and the underlying policy, espoused therein, against discovery; however, at this juncture, discovery is needed to, at a minimum, determine the players involved in the denial of Plaintiff's request for surgery. Although it "exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government, ... [l]itigation [may be] be necessary to ensure that officials comply with the law." *Iqbal,* 129 S.Ct. at 1953; *see also id.* at 1961 (finding that while it is important to prevent unwarranted litigation from interfering with the proper functioning of the government, "the law, after all, provides other legal weapons designed to prevent unwarranted interference" such as beginning discovery with lower level government officials before determining whether a case can proceed to allow discovery related to higher level government officials) (Breyer, J. dissenting).

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss will be denied.

**SO ORDERED.**

s/ Susan D. Wigenton<br>**Susan D. Wigenton, U.S.D.J.**

---

[5] "[S]everal parties to the litigation have not exchanged discovery and…those who have still need to produce documents and depose witness…." (Pl.'s Br. 24).

cc: Madeline Cox Arleo, U.S.M.J.